IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| RODNEY SMITH, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>  vs.<br><br>BANK OF HAWAII,<br><br>        Defendant. | CIV. NO. 16-00513 JMS-WRP<br><br>ORDER OVERRULING IN PART AND SUSTAINING IN PART OBJECTIONS, AND ADOPTING IN PART AND REJECTING IN PART MAGISTRATE JUDGE'S FINDINGS AND RECOMMENDATION, ECF NO. 151 |

## <u>ORDER OVERRULING IN PART AND SUSTAINING IN PART OBJECTIONS, AND ADOPTING IN PART AND REJECTING IN PART MAGISTRATE JUDGE'S FINDINGS AND RECOMMENDATION, ECF NO. 151</u>

## I. <u>INTRODUCTION</u>

Defendant Bank of Hawaii ("BOH") objects under 28 U.S.C.

§ 636(b)(1) and Local Rule 72.4 to the January 30, 2019 Findings and

Recommendation of Magistrate Judge Richard L. Puglisi to Grant in Part and Deny

in Part Plaintiffs' Motion for Class Certification, ECF No. 151 ("January 30

F&R"). ECF No. 155.

Based on the following, the court OVERRULES IN PART and

SUSTAINS IN PART the objections, and ADOPTS IN PART and REJECTS IN

PART the January 30 F&R.

## II.  BACKGROUND

**A.    Factual Background**

The court assumes a familiarity with prior orders, which set forth detailed factual backgrounds to this action.  *See Smith v. Bank of Haw.*, 2017 WL 3597522 (D. Haw. Apr. 13, 2017) ("*Smith I*") (denying BOH's Motion to Dismiss); *Smith v. Bank of Haw.*, 2018 WL 1662107 (D. Haw. Apr. 5, 2018) ("*Smith II*") (granting in part and denying in part BOH's first Motion for Summary Judgment); *Smith v. Bank of Haw.*, 2019 WL 404423 (D. Haw. Jan. 31, 2019) ("*Smith III*") (denying BOH's second Motion for Summary Judgment).

Smith seeks to certify two classes: (1) The Sufficient Funds Class and (2) The Regulation E Class.  ECF No. 131-1 at PageID #2563.  The Sufficient Funds Class is "[a]ll persons who have or have had accounts with BOH who incurred overdraft fees for transactions when the real balance in the checking account was sufficient to cover the transactions from September 9, 2015, through September 30, 2017."  *Id.*  The Regulation E Class is "[a]ll persons who have or have had accounts with BOH who incurred overdraft fee(s) for ATM or nonrecurring debit card transactions occurring from September 9, 2015, through September 30, 2017, who were opted-in using an Opt-in Agreement that defined an

overdraft as 'when you do not have enough money in your account to cover a transaction, but we pay it anyway.'" *Id.*

**B.  Procedural History**

Smith filed his Complaint and First Amended Complaint ("FAC") in the First Circuit Court of the State of Hawaii on September 9 and 13, 2016, respectively.  ECF No. 1-1 at 1, 35.  BOH removed the action to federal court on September 19, 2016.  ECF No. 1.  The FAC includes six causes of action: (1) violation of Hawaii Revised Statutes ("HRS") Chapter 480 for unfair or deceptive acts or practices ("UDAP"); (2) breach of contract; (3) breach of the covenant of good faith and fair dealing; (4) unjust enrichment; (5) money had and received; and (6) violation of Electronic Funds Transfer Act ("EFTA") for noncompliance with Regulation E.  ECF No. 1-1.

On October 22, 2018, Smith filed his Motion for Class Certification. ECF No. 131.  On December 18, 2018, BOH filed its Opposition, ECF No. 146, and on January 22, 2019, Smith filed his Reply, ECF No. 150.  On January 30, 2019, Magistrate Judge Puglisi issued the January 30 F&R.  ECF No. 151.  BOH filed its Objection to the January 30 F&R on February 13, 2019.  ECF No. 155. Smith filed his Opposition to the Objection on February 27, 2019.  ECF No. 157.

A hearing was held on April 15, 2019. The court requested supplemental briefing on EFTA detrimental reliance, ECF No. 165. On April 29, 2019, BOH filed its Supplemental Memorandum, ECF No. 168, and Smith filed his Supplemental Memorandum, ECF No. 169 (corrected version, ECF No. 171).[1]

## III. <u>STANDARD OF REVIEW</u>

When a party objects to a magistrate judge's findings or recommendations, the district court must review de novo those portions to which the objections are made and "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1); *see also United States v. Raddatz*, 447 U.S. 667, 673 (1980); *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc) ("[T]he district judge must review the magistrate judge's findings and recommendations de novo if objection is made, but not otherwise.").

---

[1] On May 6, 2019, BOH filed its "Motion to Strike Section I of Plaintiffs' Supplemental Memorandum Re Class Action [ECF No. 171] and Exhibits A and B [ECF Nos. 171-2, 171-3]" ("Motion to Strike"), arguing that Smith's Section I and Exhibits A & B exceeded the scope allowed for supplemental briefing. ECF No. 172. On May 7, 2019, Smith filed his Objection to the Motion to Strike, arguing that BOH's Motion to Strike was improperly filed and that it also failed on the merits. ECF No. 173. The court finds that the Motion to Strike was properly filed and that Smith's Section I and the two exhibits exceed the scope allowed for supplemental briefing. The court allowed supplemental briefing on the narrow questions of: (1) whether a detrimental reliance requirement precludes class certification for an EFTA claim for actual damages, and (2) if so, whether an EFTA claim for statutory damages could still be class certified. *See* 4/15/19 Tr. at 4-10, ECF No. 167 at PageID #3787-93. Accordingly, the court GRANTS the Motion to Strike, ECF No. 172, and does not consider Section I of Smith's supplemental brief or the attached Exhibits A & B in deciding this order.

Under a de novo standard, this court reviews "the matter anew, the same as if it had not been heard before, and as if no decision previously had been rendered." *Freeman v. DirecTV, Inc.*, 457 F.3d 1001, 1004 (9th Cir. 2006); *United States v. Silverman*, 861 F.2d 571, 576 (9th Cir. 1988). The district court need not hold a de novo hearing; however, it is the court's obligation to arrive at its own independent conclusion about those portions of the magistrate judge's findings or recommendation to which a party objects. *United States v. Remsing*, 874 F.2d 614, 618 (9th Cir. 1989).

## IV. <u>DISCUSSION</u>

A plaintiff moving to certify a class has the burden of showing that the proposed class satisfies the requirements of Federal Rule of Civil Procedure 23. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997); *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992).

To satisfy Rule 23(a), a proposed class must meet the prerequisites of (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. *See* Fed. R. Civ. P. 23(a); *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 462 (9th Cir. 2000) (citing *Anchem Prods., Inc.*, 521 U.S. at 612). BOH objects to the Magistrate Judge's findings and recommendation that Smith meets

the typicality prerequisite. ECF No. 155 at PageID #3536. The court overrules the objection.

To satisfy Rule 23(b), plaintiffs must show the action is maintainable under Rule 23(b)(1), (2), or (3). *See* Fed. R. Civ. P. 23(b); *In re Mego*, 213 F.3d at 462. Smith seeks class certification under Rule 23(b)(3), which requires that "the court find[] that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). BOH objects to the Magistrate Judge's findings and recommendation that Smith's UDAP claim, breach of contract claim, and EFTA claim meet the predominance requirement in Rule 23(b)(3). *See* ECF No. 155 at PageID #3533, 3535, 3537. The court overrules the objection as to the UDAP claim, breach of contract claim, and EFTA claim for statutory damages. The court sustains the objection as to the EFTA claim for actual damages.

Finally, BOH objects to the Magistrate Judge's findings and recommendation that the class period for the UDAP claim end on August 1, 2017. *Id.* at PageID #3537. BOH argues that the class period for the UDAP claim should end in June 2017, when customers received a change in terms notice that defined

"available balance," rather than on August 1, 2017, when the notice went into effect. *Id.* The court overrules the objection.

## A. Typicality

Rule 23(a)(3) permits certification only if "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class." *Hanon*, 976 F.2d at 508 (citation omitted). Typicality exists "if [representative claims] are reasonably coextensive with those of absent class members; they need not be substantially identical." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998), *overruled on other grounds by Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011). Thus, "[s]ome degree of individuality is to be expected in all cases, but that specificity does not necessarily defeat typicality." *Dukes v. Wal-Mart, Inc.*, 509 F.3d 1168, 1184 (9th Cir. 2007), *overruled on other grounds by Wal-Mart Stores, Inc.*, 564 U.S. 338. With these principles in mind, "[t]he test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon*, 976 F.2d at 508 (citation and quotation marks omitted).

To provide context to BOH's objections, the court reviews Magistrate Judge Puglisi's findings concerning typicality. Magistrate Judge Puglisi found that Smith sufficiently demonstrated typicality of his UDAP claims because those claims are "based on Defendant BOH's conduct in assessing overdraft fees and in using the Account Agreement and Opt-In Agreement that contained the overdraft provisions at issue." ECF No. 151 at PageID #3476. Magistrate Judge Puglisi also found that Smith sufficiently demonstrated typicality of his breach of contract claims because "the relevant contract provisions are the same for all putative class members and Defendant BOH's assessment of overdraft fees based on the available balance was uniform." *Id.* at PageID #3474. Finally, Magistrate Judge Puglisi found that Smith sufficiently demonstrated typicality of his EFTA claims because his "Regulation E claim is based on uniform contract language and Defendant BOH's consistent conduct in assessing fees." *Id.* at PageID #3478. BOH objects to Magistrate Judge Puglisi's finding that these claims meet the typicality prerequisite. ECF No. 155 at PageID #3552.

BOH first asserts that Smith's claims are not typical because Smith opened three accounts in the span of a few years and Smith was a customer for longer than other class members. *See* ECF No. 155 at PageID #3552-53. These facts do not defeat typicality because Smith received the same standardized

8

descriptions of the overdraft fee program (during the relevant class period) from BOH as class members who opened fewer accounts or had been a customer for less time.

Second, BOH asserts that Smith's claims are not typical because Smith may have received information about the overdraft fee program from BOH's website, his paper account statements, or his online account balance. *Id.* These facts do not defeat typicality because all class members had access to BOH's website, paper account statements, and an online account balance — and all were standardized in format.

Third, BOH asserts that Smith's claims are not typical because Smith never read his Account Agreement. *See* ECF No. 155 at PageID #3552-53. Under general contract principles, whether Smith read the Account Agreement or not is irrelevant, and BOH does not present arguments as to why those general contract principles do not apply here. *See Commerce & Indus. Ins. Co. v. Unlimited Constr. Servs., Inc.*, 353 F. Supp. 3d 904, 914 (D. Haw. 2018) ("The general rule of contract law is that one who assents to a contract is bound by it and cannot complain that he has not read it or did not know what it contained.") (citing *Courbat v. Dahana Ranch, Inc.*, 111 Haw. 254, 264, 141 P.3d 427, 437 (Haw. 2006)).

Fourth, BOH asserts that Smith's claims are not typical because Smith called BOH to complain about his overdrafts.  Under the record presented to the court, there is not enough information about Smith's phone calls with BOH to make Smith atypical from other class members.  *See Smith III*, 2019 WL 404423, at *3, 8.  Further, this type of evidence will likely have little bearing on Smith's claims, *see In re TD Bank, N.A. Debit Card Overdraft Fee Litig.*, 325 F.R.D. 136, 157 (D.S.C. 2018).  Thus, even if there are some differences arising from Smith's calls to BOH, Smith's claims can nevertheless still be resolved in the aggregate.  *See id.* at 155.

Accordingly, any differences found in Smith's situation display a "degree of individuality . . . to be expected in all cases," and Smith's claims meet the typicality prerequisite pursuant to Rule 23(a).  *Dukes*, 509 F.3d at 1184.  The objection concerning typicality is overruled.

**B.     Predominance**

A class may be certified under Rule 23(b)(3) where "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  "The Rule 23(b)(3) predominance inquiry tests whether

[the] proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods. Inc.*, 521 U.S. at 623 (citing 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure, 518-519 (2d ed. 1986)). "The focus is on 'the relationship between the common and individual issues.'" *In re Wells Fargo Home Mortg. Overtime Pay Litig.*, 571 F.3d 953, 957 (9th Cir. 2009) (quoting *Hanlon*, 150 F.3d at 1022). BOH asserts that Smith's UDAP, breach of contract, and EFTA claims do not meet the predominance requirement. *See* ECF No. 155 at PageID #3533, 3535, 3537.

### 1. UDAP Claim

BOH first argues that Smith's UDAP claim does not meet the predominance requirement because an individual inquiry must be made into: (1) BOH's representations to each customer; and (2) each customer's actual knowledge of the meaning of "available balance." *Id.* at PageID #3533-35. The court disagrees.

An individualized inquiry into BOH's representations to each customer is not required for Smith's UDAP claims. Rather, this case is akin to *Yokoyama v. Midland National Life Insurance Co.*, 594 F.3d 1087 (9th Cir. 2010), which held that predominance was established because the plaintiffs' lawsuit did not require "the fact-finder to parse what oral representations each broker made to

11

each plaintiff.  Instead, the fact-finder will focus on the standardized written materials given to all plaintiffs and determine whether those materials are likely to mislead consumers acting reasonably under the circumstances."  *Id.* at 1093 (citation and quotation marks omitted).  Like *Yokoyama*, the FAC in this case focuses on the standardized written materials given to all class members, such as the Account Agreement and the Opt-In Agreement.  *See* ECF No. 6-5 ¶¶ 22-25.  Thus, the fact-finder in this case will focus on similar questions of fact concerning standardized BOH written materials that all class members received and need not conduct an individualized assessment for each class member.[2]

Second, an individualized inquiry into each customer's actual knowledge of the meaning of available balance is not required.  For a UDAP claim brought pursuant to HRS Chapter 480, "actual deception need not be shown; the

---

[2]  This case is easily distinguishable from several cases cited by BOH because in this case uniform, standardized documents were provided to each class member.  The claims in *Berger v. Home Depot USA, Inc.*, 741 F.3d 1061 (9th Cir. 2014), *abrogated on other grounds by Microsoft Corp. v. Baker*, 137 S. Ct. 1702 (2017), involved five different versions of the relevant contract and the various existence and form of signs posted between different stores.  *Id.* at 1068-69.  The claims in *Circle Click Media LLC v. Regus Management Group LLC*, 2016 WL 1048046 (N.D. Cal. Mar. 11, 2016), involved several different versions of the relevant contract and forms, and substantial evidence was presented of variability in how and what documents were presented.  *Id.* at *12.  The claims in *Pierce-Nunes v. Toshiba America Information Systems, Inc.*, 2016 WL 5920345 (C.D. Cal. June 23, 2016) involved advertisements and product labeling that widely varied.  *Id.* at *7 ("The Court's own review of Defendants' product packaging and advertising confirms that there was a lack of uniformity.").  This case is also clearly distinguishable from another case cited by BOH, *Carrera v. First American Home Buyers Protection Co.*, 702 F. App'x 614 (9th Cir. 2017), where plaintiffs failed to show that class members were ever exposed to *any* representations from the defendant.  *Id.* at 615.

capacity to deceive is sufficient." *State by Bronster v. U.S. Steel Corp.*, 82 Haw. 32, 51, 919 P.2d 294, 313 (Haw. 1996); *see also Hungate v. Law Office of David B. Rosen*, 139 Haw. 394, 411, 391 P.3d 1, 18 (Haw. 2017) ("Proof of actual deception is unnecessary.") (citation and brackets omitted).  "Because Hawaii uses an objective test to effectuate its remedial consumer protection statute," individual reliance issues are not a proper ground to deny class certification.  *Yokoyama*, 594 F.3d at 1093.[3]  The objection concerning the predominance requirement as it relates to the UDAP claim is overruled.

---

[3]  BOH argues that the survey evidence BOH submitted from expert James E. Dannemiller is "fatal to a showing of predominance."  ECF No. 155 at PageID #3545.  In his declaration, Danemiller reported his findings:

    a.  After viewing excerpts from the overdraft disclosures that Bank of Hawaiʻi sends to its checking account customers, 65 percent of respondents identified the available balance as the account that would be used to decide whether an account is overdrawn or not.  Twenty percent (20%) indicated that the current balance would be used to determine whether an account is overdrawn.  An additional 15 percent either did not know or thought it was another balance.

    b.  After reviewing a Bank of Hawaiʻi's ATM receipt, nine out of ten (91% ) respondents understood that Hawaiʻi financial institutions maintain two account balances.

    c.  Respondents were then provided with definitions of the two accounts; available balance and current balance.  Seventy-eight percent (78%) of respondents stated that it is the available balance account that would be used to determine if a checking account is overdrawn.

    d.  One in four of the respondents (28%) were assessed an overdraft charge in the past, and 43 percent of them questioned the financial institution about these charges.  The majority who did not question their financial institution agreed with the overdraft charges.

(continued . . .)

## 2. Breach of Contract Claim

BOH argues that Smith's breach of contract claim does not meet the predominance requirement because individualized inquiries must be conducted into whether extrinsic evidence resolves the ambiguity. *See* ECF No. 155 at PageID #3535-36. In particular, BOH argues that individual inquiries into each customer's course of dealing and performance with BOH are required. *Id.*

As an initial matter, because the court found the Agreements ambiguous, *see Smith I*, 2017 WL 3597522, at *6, BOH may present extrinsic evidence (including course of dealing and performance) to show the intent of the parties to the contract, *see U.S. ex rel. Sealaska Constructors, LLC v. Walsh RMA Joint Venture*, 2014 WL 1569454, at *8 (D. Haw. Apr. 16, 2014); *Hawaiian Ass'n of Seventh-Day Adventists v. Wong*, 130 Haw. 36, 45, 305 P.3d 452, 461 (Haw. 2013).[4] Nevertheless, only some of the extrinsic evidence is relevant to determining intent. As Judge Otake discussed in *Smith III*, much of the extrinsic

(. . . continued)
ECF No. 146-26 at PageID #3149-50 (emphasis omitted). BOH argues that these results show that "the representations customers read or heard affected their understanding of the overdraft policy." ECF No. 155 at PageID #3545. That may well be true; however, it is ultimately irrelevant to this predominance inquiry, which centers on whether representations made by BOH were provided through standardized documents and procedures.

[4] BOH did in fact present extrinsic evidence in its Second Motion for Summary Judgment. *See Smith III*, 2019 WL 404423, at *2-3.

evidence presented by BOH contains the same ambiguities as those found in the

Agreements, and thus could not resolve the ambiguity. *See Smith III*, 2019 WL

404423, at *6-9. Accordingly, the court will focus on only potentially relevant

extrinsic evidence, such as: (1) BOH employee explanations about the overdraft

program; (2) the February 2010 Pamphlet; (3) the March 2010 Email; and (4) the

BOH website.

### a. *Legal framework*

It is a general contract principle that "when there is a standardized

agreement like [a] form contract[,] . . . the agreement 'is interpreted wherever

reasonable as treating alike all those similarly situated, without regard to their

knowledge or understanding of the standard terms of the writing.'" *Ewert v. eBay,

Inc.*, 2010 WL 4269259, at *7 (N.D. Cal. Oct. 25, 2010) (quoting Restatement

(Second) of Contracts § 211(2)); *see also In re TD Bank*, 325 F.R.D. at 157. Thus,

it is no surprise that courts routinely find class certification appropriate in actions

involving breaches of form contracts because defendants' conduct is standardized

toward putative class members. *Dupler v. Costco Wholesale Corp.*, 249 F.R.D. 29,

37, 46 (E.D.N.Y. 2008) (collecting cases); *see also Flanagan v. Allstate Ins. Co.*,

242 F.R.D. 421, 428 (N.D. Ill. 2007). Further, at least one court has found that the

consumer checking account agreement — the type of form contract which is at

issue in this case — is particularly suited for uniform interpretation and thus class certification. *See In re TD Bank*, 325 F.R.D. at 157 ("The contracts at issue are contracts of adhesion, involving non-negotiable terms and a vast bargaining/information imbalance between the parties. If there is *any* type of standardized agreement that ought to be interpreted uniformly, without regard to the non-drafting party's idiosyncratic comprehension of its terms, it is a consumer checking account agreement.").

And the additional consideration of extrinsic evidence does not necessarily defeat predominance if class members received standardized extrinsic evidence. *See id.* at 157 (finding predominance where the extrinsic evidence is uniform and "individual customers' 'intent' and 'course of performance' is largely irrelevant to resolving any ambiguity"); *Ellsworth v. U.S. Bank, N.A.*, 2014 WL 2734953, at *23 (N.D. Cal. June 13, 2014) (granting class certification where if any extrinsic evidence would be introduced, it would be "non-individualized extrinsic evidence"); *see also Longest v. Green Tree Servicing LLC*, 308 F.R.D. 310, 327 (C.D. Cal. 2015); *Rodman v. Safeway, Inc.*, 2014 WL 988992, at *8 (N.D. Cal. Mar. 10, 2014), *aff'd*, 694 F. App'x 612 (9th Cir. 2017) ("But even the need to take into account extrinsic evidence should not defeat certification, provided that the extrinsic evidence is common evidence."); *Menagerie Prods. v. Citysearch*,

2009 WL 3770668, at *10 (C.D. Cal. Nov. 9, 2009) (finding that extrinsic evidence could be established on a classwide basis).

But the predominance requirement may not be met, however, if defendants' conduct is materially variable toward putative class members. *See, e.g.*, *Gregurek v. United of Omaha Life Ins. Co.*, 2009 WL 4723137, at *7 (C.D. Cal. Nov. 10, 2009) (determining that variability in sales presentations to customers, where some agents of defendant provided details about the ambiguous terms, precluded classwide resolution of the ambiguity); *Monaco v. Bear Stearns Companies, Inc.*, 2012 WL 10006987, at *6-7 (C.D. Cal. Dec. 10, 2012) (finding no predominance where, among other things, some brokers explained the ambiguous terms to customers at the time of the formation of the contract, and the method customers used to make payments could demonstrate their understanding of the contract).

*In re TD Bank* discussed when defendants' conduct toward putative class members is *not* materially variable:

> Here, the same overdraft accounting policy was applied to every TD Bank customer whether he or she understood the role of available balance entirely, partially, or not at all, and irrespective of whether the customer's understanding changed during the relevant time period. There was no option for a customer, whether new or existing prior to . . . [when changes were made in how the customer's balance was calculated], to elect the use

of actual balance versus available balance, or to negotiate
a change in the mechanics of the available balance
accounting method in any fashion. *In this context, the
focus is on the Bank's conduct in relation to the
contractual language, and individual customers'
"intent" and "course of performance" is largely
irrelevant to resolving any ambiguity.*

*In re TD Bank*, 325 F.R.D. at 157 (emphasis added).

>    b.    *BOH employee explanations about the overdraft program*

BOH essentially argues that employee explanations about the
overdraft program to customers upon opening an account are materially variable
and thus raise predominance issues. *See* ECF No. 155 at PageID #3548 (arguing
that *In re TD Bank* is distinguishable from the instant case because its training
materials were standardized and bank employees were given scripts to use when
opening an account). The court disagrees. Predominance issues might arise if
BOH employees gave variable explanations to customers when they opened up an
account *and* some of those explanations included a definition of "available
balance." *See Gregurek*, 2009 WL 4723137, at *7; *Monaco*, 2012 WL 10006987,
at *6-7. But that is not the case here.

BOH has presented no evidence that any BOH employee explanations
included a definition of "available balance," and none of the training materials
included a definition of "available balance." And while these explanations were

not scripted, *see* Ryson Matsumura ("Matsumura") Decl.¶ 6, ECF No. 146-29, they were standardized: both Matsumura and Maryellen Ing ("Ing"), Vice Presidents at BOH, described a standardized training program that promoted uniform behavior from its employees when they opened up an account. *See* Ing Decl. ¶¶ 2-4, ECF No. 117-3; Ing Dep. at 8:2-9:9; 10:6-14:12; 19:1-4, ECF No. 150-4; Matsumura Decl. ¶¶ 2-6, ECF No. 146-29. Further, employees were trained using the standardized Agreements and were expected to explain the overdraft program using those Agreements. Ing Dep. at 11:24-13:2, ECF No. 150-4. As part of their training, BOH employees also ran through opening an account using the Agreements in front of BOH trainers numerous times over a three-day period. *Id.* at 14:2-12. Thus, BOH employee explanations upon opening an account were not materially variable and do not raise predominance issues.

BOH employees also provided support to customers after they opened their accounts, such as by answering phone calls from customers. *See Smith III*, 2019 WL 404423, at *3. And Smith did in fact state in his deposition that a BOH employee mentioned holds to him on one occasion. *See Smith III*, 2019 WL 404423, at *3. But BOH presents no evidence on how its employees are trained to answer questions from customers after opening an account, and the court will not

rest its predominance finding on a mere specter of non-standardization, especially where in all other areas BOH appears to standardize its conduct towards customers.

  *c.*   *February 2010 Pamphlet and the March 2010 Email*

  The February 2010 pamphlet and the March 2010 email were sent to BOH customers in February and March 2010, respectively. *See Smith III*, 2019 WL 404423, at \*7 n.6. Accordingly, those documents will likely have no bearing on the analysis for customers, like Smith, who opened up their accounts after March 2010. *See id.* It seems likely that some of the customers in each of the proposed classes will have opened up accounts prior to March 2010, and for those customers these documents would be relevant. Nevertheless, these are standardized documents sent to all customers with accounts during that time, so no individualized inquiry need be conducted.

  *d.*   *The BOH website*

  The BOH website defines available balance on its "Understanding Overdrafts" page, *see Smith III*, 2019 WL 404423, at \*2-3. Like the February 2010 pamphlet and the March 2010 email, the website is standardized so that each customer would see the same information. However, unlike the pamphlet and email, the BOH website, while accessible to all customers, was not sent out to all customers, and BOH argues that the question of whether individual customers

20

viewed this webpage requires an individualized inquiry. The court disagrees and finds that representations made on BOH's website are standardized and thus can be resolved on a classwide basis. *See Menagerie Prods.*, 2009 WL 3770668, at *10 ("Extrinsic evidence that the Court would consider in making this determination, such as representations on [defendant's] website, can be established on a classwide basis. Therefore, it cannot be said that individual issues predominate as to plaintiff's claim of breach of contract.").

In sum, Smith's breach of contract claim meets the predominance requirement even though BOH may introduce extrinsic evidence to resolve the ambiguity in the Agreements. Thus, the objection concerning the predominance requirement as it relates to the breach of contract claim is overruled.

### 3.    *EFTA Claim*

BOH argues that Smith's EFTA claim for actual damages does not meet the predominance requirement because an individualized inquiry into whether each class member detrimentally relied on the Regulation E notice is necessary. *See* ECF No. 155 at PageID #3537. The court agrees.

EFTA provides for both actual and statutory damages remedies. *See* 15 U.S.C. § 1693m(a). For actual damages, a consumer may recover "an amount equal to the sum of . . . any actual damage sustained by such consumer *as a result*

of such a failure [to comply with EFTA's provisions]." 15 U.S.C. § 1693m(a)(1) (emphasis added). One such provision is Regulation E, which requires banks to provide a notice describing their overdraft services before customers opt into those services. *See Smith I*, 2017 WL 3597522, at *2 (citing 12 C.F.R. § 1005.17(b)(1)(i)).

Also, as an initial matter, the court will rely on both EFTA and Truth in Lending Act ("TILA") jurisprudence. *Smith III* discusses the similarities between EFTA and TILA, both of which were enacted as part of the Consumer Credit Protection Act, have notice provisions, and have actual damages liability provisions. *See Smith III*, 2019 WL 404423, at *11-12; *see also Vallies v. Sky Bank*, 591 F.3d 152, 161 (3d Cir. 2009). Courts frequently rely on TILA jurisprudence when interpreting EFTA's actual damages provision because EFTA and TILA have identical provisions. *Voeks v. Pilot Travel Ctrs.*, 560 F. Supp. 2d 718, 722 (E.D. Wis. 2008); *see also In re TD Bank*, 325 F.R.D. at 165 ("[C]ourts interpreting § 1693m [of EFTA] have often looked to decisions interpreting TILA for guidance.").

Judge Otake previously ruled that Smith is required to prove detrimental reliance to recover actual (rather than statutory) damages under EFTA, reasoning that:

22

> While the Ninth Circuit has not directly addressed this issue, a number of other courts have. The Third Circuit stated that actual damages for violations of EFTA's 'notice' provisions, which are analogous to violations of TILA disclosure provisions, require a showing of detrimental reliance. A majority of district courts have found that, in a claim of actual damages under EFTA, proof of causation requires detrimental reliance. Further, the Ninth Circuit has held that under TILA, a plaintiff must establish detrimental reliance to show causation.

*Smith III*, 2019 WL 404423, at *12 (citations and editorial marks omitted). This is the law of the case, and in any event, the court agrees with that finding.

The question remains whether individualized inquiries into detrimental reliance are required at the liability stage (rather than solely at the damages stage), and if so, would they defeat class certification.

A few district courts have found that a detrimental reliance requirement does not defeat class certification because it concerns damages rather than liability, and damages can be decided at a later stage of the proceedings without affecting class certification. *See Friedman v. 24 Hour Fitness USA, Inc.*, 2009 WL 2711956, at *10 (C.D. Cal. Aug. 25, 2009) ("The purported detrimental reliance requirement does not create individualized issues for the liability stage.") (citing *Flores v. Diamond Bank*, 2008 WL 4861511, at *3 (N.D. Ill. Nov. 7, 2008)); *cf. Savrnoch v. First Am. Bankcard, Inc.*, 2007 WL 3171302 (E.D. Wis. Oct. 26, 2007). But the court is persuaded by cases like *In re TD Bank* that reject

23

the "notion that detrimental reliance is merely a damages calculation problem."

325 F.R.D. at 167. Instead, *In re TD Bank* finds that detrimental reliance "is an element of Plaintiffs' liability case for actual damages pursuant to § 1693m(a)(1)." *Id.*; *Voeks*, 560 F. Supp. 2d at 721-24; *see also Turner v. Beneficial Corp.*, 242 F.3d 1023, 1028 (11th Cir. 2001) ("The legislative history emphasizes that TILA provides for statutory remedies on proof of a simple TILA violation, and requires the more difficult showing of detrimental reliance to prevail on a claim for actual damages. . . . We hold that detrimental reliance is an element of a TILA claim for actual damages, that is a plaintiff must present evidence to establish a causal link between the financing institution's noncompliance and his damages."); *Johnson v. U.S. Bank Nat. Ass'n,* 2011 WL 6275963, at *5 (D. Minn. Dec. 15, 2011); *Stilz v. Global Cash Network, Inc.*, 2010 WL 3975588, at *5 (N.D. Ill. Oct. 7, 2010). Because detrimental reliance inquiries must be conducted at the liability stage, individual issues will predominate the EFTA claim for actual damages.

As a final matter, Plaintiff may continue to pursue its EFTA claim for statutory damages, even absent proof of any actual damages. *See Sandra Klemetson Individually v. WinCo Foods, LLC*, 2013 WL 12123740, at *4 (C.D. Cal. Apr. 3, 2013) (citing cases) ("Th[e] damages provision is unambiguous. Plaintiff may seek two forms of damages for violation of the notice provision:

actual damages and statutory damages.  By providing for statutory damages, EFTA

provides Plaintiff with a mechanism of redress for statutory violations, even if

those violations do not result in actual damages.").

Accordingly, the court finds the Rule 23(b)(3) predominance

requirement to be met for the UDAP and breach of contract claims as well as the

EFTA claim for statutory damages.  The predominance requirement is not met for

the EFTA claim for actual damages.  Accordingly, the objection concerning the

predominance requirement is sustained in part and overruled in part.

## C.    Class Period

BOH argues that the class period for the UDAP claim should end in

June 2017 when a change in terms notice ("June 2017 CIT"), ECF No. 146-13, was

sent to customers that unambiguously defined available balance when detailing the

overdraft practices.  *See* ECF No. 155 at PageID #3554-55.  The court disagrees.

In the January 30 F&R, Magistrate Judge Puglisi correctly determined

that the class period should end on August 1, 2017, the date that the June 2017 CIT

went into effect.  *See* ECF No. 151 at PageID #3487.  The court is not convinced

by BOH's argument that the class period should end when the June 2017 CIT was

sent to customers because at that point they were fully informed of BOH's

overdraft practices (BOH never changed its overdraft practices — just better

explained them). *See* ECF No. 155 at PageID #3554. Rather, the plain language of the June 2017 CIT clearly stated to BOH customers that the overdraft policy, including the definition for available balance, was changing and that those changes would go into effect on August 1, 2017: "Effective from and after August 1, 2017, the following change is being made to your [Deposit Agreement] . . . ." ECF No. 146-13 at PageID #3071. Accordingly, there was no reason for a BOH customer to think that the overdraft practices (including the definition of available balance) would only go into effect earlier than August 1, 2017. The objection concerning the class period is overruled.

///

///

///

///

///

///

///

///

///

///

# V. **CONCLUSION**

For the foregoing reasons, the court ADOPTS IN PART and

REJECTS IN PART the January 30 F&R.  The objections are OVERRULED IN

PART and SUSTAINED IN PART.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, June 28, 2019.



  /s/ J. Michael Seabright
J. Michael Seabright
Chief United States District Judge

*Smith v. Bank of Haw.*, Civ No. 16-00513 JMS-WRP, Order Overruling in Part and Sustaining in Part Objections, and Adopting in Part and Rejecting in Part Magistrate Judge's Findings and Recommendation, ECF No. 151